IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF TEXAS

TYLER DIVISION

| | | |
|---|---|---|
| BLUE SPIKE, LLC, | § | |
| *Plaintiff*, | § | Civil Action No. 16-cv-1142 |
| | § | |
| v. | § | JURY TRIAL DEMANDED |
| | § | |
| ARCHOS, INC., | § | |
| CELKON IMPEX PVT LTD., | § | |
| COSMIC TECHNOLOGIES, INC., | § | |
| GIGA-BYTE TECHNOLOGY CO., | § | |
| LTD., G.B.T. INC., KARBONN | § | |
| MOBILE INDIA PRIVATE LIMITED, | § | |
| KYOCERA COMMUNICATIONS, | § | |
| INC., MEIZU TECHNOLOGY CO., | § | |
| LTD., MICROMAX INFORMATICS | § | |
| LIMITED, VIEWSONIC | § | |
| CORPORATION, VIZIO, INC., AND | § | |
| VODAFONE GROUP PLC | § | |
| | § | |
| *Defendants*. | § | |

ORIGINAL COMPLAINT FOR PATENT INFRINGEMENT

Plaintiff Blue Spike, LLC files this complaint against Defendants Archos, Inc.

("Archos"), Celkon Impex Pvt Ltd. ("Celkon"), Cosmic Technologies, Inc. ("Cherry

Mobile"), Giga-Byte Technology Co. and G.B.T. Inc. (collectively "Gigabyte"), Karbonn

Mobile India Private Limited ("Karbonn"), Kyocera Communications, Inc. ("Kyocera"),

Meizu Technology Co., Ltd. ("Meizu"), Micromax Informatics Limited ("Micromax"),

ViewSonic Corporation ("ViewSonic"), Vizio, Inc. ("Vizio"), and Vodafone Group PLC

("Vodafone") (collectively, "Defendants"), alleging infringement of U.S. Patent

No. 5,745,569, titled "Method for Stega-Cipher Protection of Computer Code" (the "'569 Patent"), and U.S. Patent No. 8,930,719, titled "Data Protection Method and Device" (the "'719 Patent," collectively with the '569 Patent, the "Patents-in-Suit") as follows:

## NATURE OF THE SUIT

1.      This is a claim for patent infringement arising under the patent laws of the United States, Title 35 of the United States Code.

## PARTIES

2.      Plaintiff Blue Spike, LLC is a Texas limited liability company and has its headquarters and principal place of business at 1820 Shiloh Road, Suite 1201-C, Tyler, Texas 75703. Blue Spike, LLC is the assignee of the Patents-in-Suit, and has ownership of all substantial rights in the Patents-in-Suit, including the rights to grant sublicenses, to exclude others from using it, and to sue and obtain damages and other relief for past and future acts of patent infringement.

3.      On information and belief, Archos, Inc. is a company organized and existing under the laws of California with its principal place of business at 7951 Maplewood Ave., Suite 260, Greenwood Village, Colorado 80111. Archos, Inc. may be served through its registered agent Eastbiz Corporation at 2972 Columbia St., Torrance, California 90503.

4.      On information and belief, Celkon Impex Pvt Ltd. is a company organized and existing under the laws of India with its principal place of business at 3rd floor, 2nd block, My Home Hub, Madhapur, Hyderabad – 500081, Andhra Pradesh, India.

5.      On information and belief, Cosmic Technologies, Inc. is a company organized and existing under the laws of the Philippines with its principal place of business at Unit

1002, Pearl of the Orient Tower, 1240 Roxas Boulevard, Ermita, Manila, 1000 Philippines.

6.      On information and belief, Giga-Byte Technology Co., Ltd. d/b/a Gigabyte is a corporation organized and existing under the laws of Taiwan with its principal place of business at No. 6, Bao Chiang Road, Hsin-Tien Dist., New Taipei City 231, Taiwan. On information and belief, Giga-Byte Technology Co., Ltd. may be served through its registered agent Pei-Chen Yeh at No 6. Bao Chiang Road, Hsin-Tien Dist., New Taipei City 231, Taiwan.

7.      On information and belief, G.B.T. Inc. is a corporation organized and existing under the laws of California with its principal place of business at 17358 Railroad Street, City of Industry, California 91748. G.B.T. Inc. may be served through its registered agent Eric C. Lu at 17358 Railroad St., City of Industry, California 91748.

8.      On information and belief, Karbonn Mobile India Private Limited is a company organized and existing under the laws of India with its principal place of business at #39/13, off 7th main, HAL 2nd stage, Appareddy Palya, Indiranagar, Bangalore 560038.

9.      On information and belief, Kyocera Communications, Inc. is incorporated in Delaware with its principal place of business at 9520 Towne Centre Dr., San Diego, CA 92121. Kyocera Communications, Inc. is registered in the state of Texas and may be served through its registered agent CSC-Lawyers Incorporating Service Company at 211 E. 7th Street, Suite 620, Austin, Texas 78701.

10.     On information and belief, Meizu Technology Co., Ltd. is a company registered in China with its principal place of business at Meizu Technology Building, Technology & Innovation Coast, Zhuhai, Guangdon, China.

11.    On information and belief, Micromax Informatics Limited is a company organized and existing under the laws of India with its principal place of business at 21/14, Naraina Industrial Area, New Delhi 110028 India.

12.    On information and belief, ViewSonic Corporation is a company organized and existing under the laws of Delaware with its principal place of business at 381 Brea Canyon Rd., Walnut, California 91789. ViewSonic Corporation is registered in Texas and may be served through its registered agent C.T. Corporation Systems at 350 N. St. Paul St., Suite 2900, Dallas, Texas 75201.

13.    On information and belief, Vizio, Inc. is a corporation organized and existing under the laws of California with its principal place of business at 39 Tesla, Irvine, CA 92618. Vizio, Inc. is registered in the state of Texas and may be served through its registered agent CT Corporation System at 1999 Bryan St., Suite 900, Dallas, TX 75201.

14.    On information and belief, Vodafone Group Plc. is an England public limited company with its principal place of business at Vodafone House, The Connection, Newbury, Berkshire RG14 2FN.

**JURISDICTION AND VENUE**

15.    This lawsuit is a civil action for patent infringement arising under the patent laws of the United States, 35 U.S.C. § 101 *et seq.* The Court has subject-matter jurisdiction pursuant to 28 U.S.C. §§ 1331, 1332, 1338(a), and 1367.

16.    The Court has personal jurisdiction over Defendants for at least four reasons: (1) Defendants have committed acts of patent infringement and contributed to and induced acts of patent infringement by others in this District and elsewhere in Texas; (2) Defendants regularly do business or solicit business in this District and in Texas;

(3) Defendants engage in other persistent courses of conduct and derives substantial revenue from products and/or services provided to individuals in this District and in Texas; and (4) Defendants have purposefully established substantial, systematic, and continuous contacts with the District and should reasonably expect to be haled into court here.

17.     Venue is proper in this judicial district under 28 U.S.C. §§ 1391(b)-(c) and 1400(b) because Defendants do business in the State of Texas, Defendants have committed acts of infringement in Texas and in the District, a substantial part of the events or omissions giving rise to Blue Spike's claims happened in the District, and Defendants are subject to personal jurisdiction in the District.

## FACTUAL BACKGROUND

### A.     Moskowitz's History

18.     Protection of intellectual property is a prime concern for creators and publishers of digitized copies of copyrightable works, such as musical recordings, movies, video games, and computer software. Blue Spike founder Scott Moskowitz pioneered—and continues to invent—technology that makes such protection possible.

19.     Moskowitz is a senior member of the Institute of Electrical and Electronics Engineers (IEEE), a member of the Association for Computing Machinery, and the International Society for Optics and Photonics (SPIE). As a senior member of the IEEE, Moskowitz has peer-reviewed numerous conference papers and has submitted his own publications.

20.     Moskowitz is an inventor of more than 100 patents, including forensic watermarking, signal abstracts, data security, software watermarks, product license keys,

deep packet inspection, license code for authorized software and bandwidth securitization.

21.     The National Security Agency (NSA) even took interest in his work after he filed one of his early patent applications. The NSA made the application classified under a "secrecy order" while it investigated his pioneering innovations and their impact on national security.

22.     As an industry trailblazer, Moskowitz has been a public figure and an active author on technologies related to protecting and identifying software and multimedia content. A 1995 *New York Times* article—titled "TECHNOLOGY: DIGITAL COMMERCE; 2  plans for watermarks, which can bind proof of authorship to electronic works"—recognized Moskowitz's company as one of two leading software start-ups in this newly created field. *Forbes* also interviewed Moskowitz as an expert for "Cops Versus Robbers in Cyberspace," a September 9, 1996 article about the emergence of digital watermarking and rights-management technology. He has also testified before the Library of Congress regarding the Digital Millennium Copyright Act.

23.     Moskowitz has spoken to the RSA Data Security Conference, the International Financial Cryptography Association, Digital Distribution of the Music Industry, and many other organizations about the business opportunities that digital watermarking creates. Moskowitz also authored *So This Is Convergence?*, the first book of its kind about secure digital-content management. This book has been downloaded over a million times online and has sold thousands of copies in Japan, where Shogakukan published it under the name *Denshi Skashi*, literally "electronic watermark." Moskowitz was asked to author the introduction to *Multimedia Security Technologies for Digital Rights*

*Management*, a 2006 book explaining digital-rights management. Moskowitz authored a paper for the 2002 International Symposium on Information Technology, titled "What is Acceptable Quality in the Application of Digital Watermarking: Trade-offs of Security, Robustness and Quality." He also wrote an invited 2003 article titled "Bandwidth as Currency" for the *IEEE Journal*, among other publications.

24.     Moskowitz and Blue Spike continue to invent technologies that protect intellectual property from unintended use or unauthorized copying.

**B.     The Accused Technology**

25.     Address Space Layout Randomization ("ASLR") is a security technique that protects software by shuffling it in computer memory. Prior to implementing ASLR, modern-day operating systems often loaded software into predictable memory locations. That predictability allowed attackers to pinpoint specific potions of software and manipulate them in unintended ways. In response to this grave threat, many operating systems now utilize ASLR to reduce predictability by shuffling software to random memory locations.

26.     The Android Operating System ("Android" or "Android OS") utilizes ASLR technology to protect itself and other software from abuse. Android began implementing ASLR technology as early as version 2, and advertised more robust implementations by versions 4 and 4.1.

**C.     The Accused Products**

27.     Defendant Archos designs, develops, employs, and/or manufactures Address Space Layout Randomization ("ASLR") software, systems, and/or technology. Archos

makes, uses, offers for sale and/or imports into the U.S. products, systems, and/or services including, but not limited to, its 80 G9, 80 XS, 101 G9, 101 XS, 101 Titanium, 101 XS 2, 40 Titanium, 45 Titanium, 50 Titanium, 53 Titanium, 70 Titanium, 80 Cobalt, 80 G9, 80 Titanium, 97 Carbon, 97 Titanium HD, 97 Xenon, ChefPad, ChildPad, FamilyPad 2, GamePad and GamePad 2 devices (collectively, the "Archos Accused Products"), which infringe one or more claims of the Patents-in-Suit. On information and belief, the Archos Accused Products use various versions of the Android Operating System, beginning with version 4.0, that implement the accused ASLR technology.

28.     Archos has not sought or obtained a license for any of Blue Spike's patented technologies.

29.     Yet the Archos Accused Products are using methods, devices, and systems taught by Blue Spike's Patents-in-Suit.

30.     Defendant Celkon designs, develops, employs, and/or manufactures Address Space Layout Randomization ("ASLR") software, systems, and/or technology. Celkon makes, uses, offers for sale and/or imports into the U.S. products, systems, and/or services including, but not limited to, its A10, A105, A107, A112, A118, A119 Signature HD, A119Q Signature HD, A15, A20, A200, A22, A220, A225, A27, A60, A63, A67, A9+, A97i, A98, AR45, CT 1, CT 2, CT 9, CT-910, CT-910+, and Monalisa 5 devices (collectively, the "Celkon Accused Products"), which infringe one or more claims of the Patents-in-Suit. On information and belief, the Celkon Accused Products use various versions of the Android Operating System, beginning with version 4.0, that implement the accused ASLR technology.

31.     Celkon has not sought or obtained a license for any of Blue Spike's patented technologies.

32.     Yet the Celkon Accused Products are using methods, devices, and systems taught by Blue Spike's Patents-in-Suit.

33.     Defendant Cherry Mobile designs, develops, employs, and/or manufactures Address Space Layout Randomization ("ASLR") software, systems, and/or technology. Cherry Mobile makes, uses, offers for sale and/or imports into the U.S. products, systems, and/or services including, but not limited to, its Advance, Amber, Apollo, Blaze, Blaze 2.0, Burst, Burst 2.0, Click, Cosmos S, Cosmos X, Cosmos X2, Cosmos Z, Fire, Cruize, Flame, Flame 2.0, Flare, Flare 2x, Flare 2.0, Fusion Bolt, Fusion Ice, Fusion Fire, Fusion Wave, Gem, Hyper, Omega, Omega HD 2.0, Omega XL, Skyfire, Skyfire 2.0, Superion Discover, Superion Plus Duo, Superion TV, Superion Voyager, Supreme, Titan, Titan TV, Tornado, Thunder and Thunder 2.0 devices (collectively, the "Cherry Mobile Accused Products"), which infringe one or more claims of the Patents-in-Suit. On information and belief, the Cherry Mobile Accused Products use various versions of the Android Operating System, beginning with version 4.0, that implement the accused ASLR technology.

34.     Cherry Mobile has not sought or obtained a license for any of Blue Spike's patented technologies.

35.     Yet the Cherry Mobile Accused Products are using methods, devices, and systems taught by Blue Spike's Patents-in-Suit.

36.     Defendant Gigabtye designs, develops, employs, and/or manufactures Address Space Layout Randomization ("ASLR") software, systems, and/or technology. Gigabtye

makes, uses, offers for sale and/or imports into the U.S. products, systems, and/or services including, but not limited to, its GSmart Aku A1, GSmart Alto A2, GSmart G1342 Houston, GSmart G1362, GSmart GS202, GSmart Guru G1, GSmart Maya M1, GSmart Maya M1 v2, GSmart Rio R1, GSmart Roma R2, GSmart Sierra S1, GSmart Simba SX1, and GSmart Tuku T2 devices (collectively, the "Gigabyte Accused Products"), which infringe one or more claims of the Patents-in-Suit. On information and belief, the Gigabtye Accused Products use various versions of the Android Operating System, beginning with version 4.0, that implement the accused ASLR technology.

37.    Gigabyte has not sought or obtained a license for any of Blue Spike's patented technologies.

38.    Yet the Gigabyte Accused Products are using methods, devices, and systems taught by Blue Spike's Patents-in-Suit.

39.    Defendant Karbonn designs, develops, employs, and/or manufactures Address Space Layout Randomization ("ASLR") software, systems, and/or technology. Karbonn makes, uses, offers for sale and/or imports into the U.S. products, systems, and/or services including, but not limited to, its A1+, A10, A11, A111, A15, A2, A2+, A21, A25, A27 Retina, A3, A30, A34, A37, A4, A4+, A5, A6, A7 Star, A9, A9+, S1 Titanium, S5 Titanium, S9 Titanium, Smart Tab 10, Smart Tab 7, Smart Tab 8, Smart Tab 9, and Smart Tab2 devices (collectively, the "Karbonn Accused Products"), which infringe one or more claims of the Patents-in-Suit. On information and belief, the Karbonn Accused Products use various versions of the Android Operating System, beginning with version 4.0, that implement the accused ASLR technology.

40.    Karbonn has not sought or obtained a license for any of Blue Spike's patented technologies.

41.    Yet the Karbonn Accused Products are using methods, devices, and systems taught by Blue Spike's Patents-in-Suit.

42.    Defendant Kyocera designs, develops, employs, and/or manufactures Address Space Layout Randomization ("ASLR") software, systems, and/or technology. Kyocera makes, uses, offers for sale and/or imports into the U.S. products, systems, and/or services including, but not limited to, its Hydro C5170, Hydro Elite, Hydro Xtrm, Rise C5155, and Torque E6710 devices (collectively, "Kyocera Accused Products"), which infringe one or more claims of the Patents-in-Suit. On information and belief, the Kyocera Accused Products use various versions of the Android Operating System, beginning with version 4.0, that implement the accused ASLR technology.

43.    Kyocera has not sought or obtained a license for any of Blue Spike's patented technologies.

44.    Yet the Kyocera Accused Products are using methods, devices, and systems taught by Blue Spike's Patents-in-Suit.

45.    Defendant Meizu designs, develops, employs, and/or manufactures Address Space Layout Randomization ("ASLR") software, systems, and/or technology. Meizu makes, uses, offers for sale and/or imports into the U.S. products, systems, and/or services including, but not limited to, its MX2, MX3, and MX 4-core devices (collectively, the "Meizu Accused Products"), which infringe one or more claims of the Patents-in-Suit. On information and belief, the Meizu Accused Products use various versions of the

Android Operating System, beginning with version 4.0, that implement the accused ASLR technology.

46.     Meizu has not sought or obtained a license for any of Blue Spike's patented technologies.

47.     Yet the Meizu Accused Products are using methods, devices, and systems taught by Blue Spike's Patents-in-Suit.

48.     Defendant Micromax designs, develops, employs, and/or manufactures Address Space Layout Randomization ("ASLR") software, systems, and/or technology. Micromax makes, uses, offers for sale and/or imports into the U.S. products, systems, and/or services including, but not limited to, its A100, A101, A110 Canvas 2, A110Q Canvas 2 Plus, A111 Canvas Doodle, A113 Canvas Ego, A115 Canvas 3D, A116 Canvas HD, A117 Canvas Magnus, A240 Canvas Doodle 2, A25, A45, A50 Ninja, A52, A55, A56, A57 Ninja 3.0, A60, A63 Canvas Fun, A70, A73, A74 Canvas Fun, A75, A76, A78, A80 , A84, A85, A87 Ninja 4.0, A88, A89 Ninja, A90, A90s, A92, Bolt A27, Bolt A35, Bolt A51, Bolt A62, Canvas 4 A210, Canvas Tab P650, Canvas Turbo, Funbook 3G P560, Funbook 3G P600, Funbook Alfa P250, Funbook Infinity P275, Funbook P300, Funbook Pro, Funbook Talk P360, Funbook Talk P362, Ninja A54, Ninja A91, Superfone Punk A44, and Viva A72 devices (collectively, the "Micromax Accused Products"), which infringe one or more claims of the Patents-in-Suit. On information and belief, the Micromax Accused Products use various versions of the Android Operating System, beginning with version 4.0, that implement the accused ASLR technology.

49.     Micromax has not sought or obtained a license for any of Blue Spike's patented technologies.

50.     Yet the Micromax Accused Products are using methods, devices, and systems taught by Blue Spike's Patents-in-Suit.

51.     Defendant ViewSonic designs, develops, employs, and/or manufactures Address Space Layout Randomization ("ASLR") software, systems, and/or technology. ViewSonic makes, uses, offers for sale and/or imports into the U.S. products, systems, and/or services including, but not limited to, its ViewPad E100, ViewPad G70, ViewPhone 4s, ViewPhone 5e, and ViewPad E70 devices (collectively, the "ViewSonic Accused Products"), which infringe one or more claims of the Patents-in-Suit. On information and belief, the ViewSonic Accused Products use various versions of the Android Operating System, beginning with version 4.0, that implement the accused ASLR technology.

52.     ViewSonic has not sought or obtained a license for any of Blue Spike's patented technologies.

53.     Yet the ViewSonic Accused Products are using methods, devices, and systems taught by Blue Spike's Patents-in-Suit.

54.     Defendant Vizio designs, develops, employs, and/or manufactures Address Space Layout Randomization ("ASLR") software, systems, and/or technology. Vizio makes, uses, offers for sale and/or imports into the U.S. products, systems, and/or services including, but not limited to, its 7" Tablet and 10" Tablet devices (collectively, the "Vizio Accused Products"), which infringe one or more claims of the Patents-in-Suit. On information and belief, the Vizio Accused Products use various versions of the Android Operating System, beginning with version 4.0, that implement the accused ASLR technology.

55.     Vizio has not sought or obtained a license for any of Blue Spike's patented technologies.

56.     Yet the Vizio Accused Products are using methods, devices, and systems taught by Blue Spike's Patents-in-Suit.

57.     Defendant Vodafone designs, develops, employs, and/or manufactures Address Space Layout Randomization ("ASLR") software, systems, and/or technology. Vodafone makes, uses, offers for sale and/or imports into the U.S. products, systems, and/or services including, but not limited to, its Smart III 975, Smart Mini, Smart Tab II 10, and Smart Tab II 7 devices (collectively, the "Vodafone Accused Products"), which infringe one or more claims of the Patents-in-Suit. On information and belief, the Vodafone Accused Products use various versions of the Android Operating System, beginning with version 4.0, that implement the accused ASLR technology.

58.     Vodafone has not sought or obtained a license for any of Blue Spike's patented technologies.

59.     Yet the Vodafone Accused Products are using methods, devices, and systems taught by Blue Spike's Patents-in-Suit.

60.     Collectively, the Archos Accused Products, the Celkon Accused Products, the Cherry Mobile Accused Products, the Gigabyte Accused Products, the Karbonn Accused Products, the Kyocera Accused Products, the Meizu Accused Products, Micromax Accused Products, the ViewSonic Accused Products, the Vizio Accused Products, and the Vodafone Accused Products are referred to herein as the "Accused Products."

**COUNT 1:**
**INFRINGEMENT OF U.S. PATENT NO. 5,745,569**

61.     Blue Spike incorporates by reference the allegations in paragraphs 1-60 above in this Complaint.

62.     The '569 Patent is valid, is enforceable, and was duly and legally issued on April 28, 1998.  A true and correct copy of the '569 Patent is attached to this Complaint as Exhibit A.

63.     Without a license or permission from Blue Spike, Defendants have infringed and continues to infringe on one or more claims of the '569 Patent—directly, contributorily, or by inducement—by importing, making, using, offering for sale, or selling products and devices that embody the patented invention, including, without limitation, one or more of the Accused Products, in violation of 35 U.S.C. § 271.

64.     Defendants have been and now are directly infringing by, among other things, practicing all of the steps of the '569 Patent and/or directing, controlling, and obtaining benefits from its partners, distributors and retailers practicing all of the steps of the '569 Patent.

65.     Defendants have been and now are indirectly infringing by way of inducing infringement by others and/or contributing to the infringement by others of the '569 Patent in the State of Texas, in this judicial district, and elsewhere in the United States, by, among other things, making, using, importing, offering for sale, and/or selling, without license or authority, products for use in systems that fall within the scope of one or more claims of the '569 Patent. Such products include, without limitation, one or more of the Accused Products. Such products have no substantial non-infringing uses and are for use in systems that infringe the '569 Patent. By making, using, importing offering for

sale, and/or selling such products, Defendants injured Blue Spike and are thus liable to Blue Spike for infringement of the '569 Patent under 35 U.S.C. § 271. Those whom Defendants induce to infringe and/or to whose infringement Defendants contribute are the end users of the Accused Products. *See Dynacore Holdings Corp. v. U.S. Philips Corp.*, 363 F.3d 1263, 1272 (Fed. Cir. 2004). Defendants had knowledge of the '569 Patent at least as early as the service of this complaint and is thus liable for infringement of one or more claims of the '569 Patent by actively inducing infringement and/or is liable as contributory infringer of one or more claims of the '569 Patent under 35 U.S.C. § 271.

66.     Defendants' acts of infringement of the '569 Patent have caused damage to Blue Spike, and Blue Spike is entitled to recover from Defendants the damages sustained as a result of Defendants' wrongful acts in an amount subject to proof at trial pursuant to 35 U.S.C. § 271. Defendants' infringement of Blue Spike's exclusive rights under the '569 Patent will continue to damage Blue Spike, causing it irreparable harm, for which there is no adequate remedy at law, warranting an injunction from the Court.

67.     On information and belief, the infringement of the Patents-in-Suit by Defendants has been willful and continues to be willful. Defendants knew or should have known that their incorporation of the accused technology in their Accused Products represented an objectively high likelihood of infringing the patents-in-suit. *See In re Seagate Tech., LLC*, 497 F.3d 1360, 1371 (Fed. Cir. 2007) (en banc). Defendants had knowledge of the Patents-in-Suit, including but not limited to at least one or more of the following:

   a.     The '569 patent has been forward-cited as prior art in connection with the examination of at least 300 subsequently-issued U.S. patents, including Microsoft in its

patent titled "License-based cryptographic technique, particularly suited for use in a digital rights management system, for controlling access and use of bore resistant software objects in a client computer," Digimarc in its patent titled "Anti-piracy system for wireless telephony," AT&T in multiple patents including one of its U.S. Patent titled "Protected IP telephony calls using encryption," NEC in its U.S. Patent titled "Method and system for protecting digital data from unauthorized copying," Matsushita Electric Industrial in its U.S. Patent titled "Active data hiding for secure electronic media distribution," and multiple other well-known companies and government agencies, including The U.S. Army, Intertrust Technologies, Texas Instruments, Dell Products, Intel, ShieldIP, Borland Software Company, Avaya Inc., Shoretel Inc., and Syndata Technologies.

  b.  The filing and service of this Complaint.

68. On information and belief, Defendants had at least constructive notice of the '569 Patent by operation of law.

**COUNT 2:**
**INFRINGEMENT OF U.S. PATENT NO. 8,930,719**

69. Blue Spike incorporates by reference the allegations in paragraphs 1-68 above in this Complaint.

70. The '719 Patent is valid, is enforceable, and was duly and legally issued on January 6, 2015.  A true and correct copy of the '719 Patent is attached to this Complaint as Exhibit B.

71. Without a license or permission from Blue Spike, Defendants have infringed and continues to infringe on one or more claims of the '719 Patent—directly, contributorily, or by inducement—by importing, making, using, offering for sale, or selling products and

devices that embody the patented invention, including, without limitation, one or more of the Accused Products, in violation of 35 U.S.C. § 271.

72.    Defendants have been and now are directly infringing by, among other things, practicing all of the steps of the '719 Patent and/or directing, controlling, and obtaining benefits from its partners, distributors and retailers practicing all of the steps of the '719 Patent.

73.    Defendants have been and now are indirectly infringing by way of inducing infringement by others and/or contributing to the infringement by others of the '719 Patent in the State of Texas, in this judicial district, and elsewhere in the United States, by, among other things, making, using, importing, offering for sale, and/or selling, without license or authority, products for use in systems that fall within the scope of one or more claims of the '719 Patent. Such products include, without limitation, one or more of the Accused Products. Such products have no substantial non-infringing uses and are for use in systems that infringe the '719 Patent. By making, using, importing offering for sale, and/or selling such products, Defendants injured Blue Spike and is thus liable to Blue Spike for infringement of the '719 Patent under 35 U.S.C. § 271. Those whom Defendants induce to infringe and/or to whose infringement Defendants contribute are the end users of the Accused Products. *See Dynacore Holdings Corp. v. U.S. Philips Corp.*, 363 F.3d 1263, 1272 (Fed. Cir. 2004). Defendants had knowledge of the '719 Patent at least as early as the service of this complaint and is thus liable for infringement of one or more claims of the '719 Patent by actively inducing infringement and/or is liable as contributory infringer of one or more claims of the '719 Patent under 35 U.S.C. § 271.

74.    Defendants' acts of infringement of the '719 Patent have caused damage to Blue Spike, and Blue Spike is entitled to recover from Defendants the damages sustained as a result of Defendants' wrongful acts in an amount subject to proof at trial pursuant to 35 U.S.C. § 271. Defendants' infringement of Blue Spike's exclusive rights under the '719 Patent will continue to damage Blue Spike, causing it irreparable harm, for which there is no adequate remedy at law, warranting an injunction from the Court.

75.    On information and belief, the infringement of the '719 Patent by Defendants has been willful and continues to be willful. Defendants knew or should have known that their incorporation of the accused technology in their Accused Products represented an objectively high likelihood of infringing the patents-in-suit. *See In re Seagate Tech., LLC*, 497 F.3d 1360, 1371 (Fed. Cir. 2007) (en banc). Defendants had knowledge of the '719 Patent, including but not limited to at least one or more of the following:

    a.   The filing of Plaintiff's prior lawsuits asserting the '719 Patent against five major smartphone manufacturers—Xiaomi, Huawei, Infosonics, DDM Brands, and ZTE (consolidated as *Blue Spike, LLC v. Beijing Xiaomi Technology Co. Ltd. et al.* (E.D. Tex.) Case No. 2:15-CV-01785)—which has been widely publicized and reported upon—*see*, *e.g.*, "China's Xiaomi slapped with patent-infringement suit by Blue Spike in US over upcoming Mi 5, Mi 5 Plus smartphones" *South China Morning Post* (Dec. 9, 2015), available at http://www.scmp.com/tech/enterprises/article/1889024/chinas-xiaomi-slapped-patent-infringement-suit-blue-spike-us-over and attached as Exhibit C.

    b.    The filing and service of this Complaint.

76.    On information and belief, Defendants had at least constructive notice of the '719 Patent by operation of law.

**REQUEST FOR RELIEF**

Blue Spike incorporates each of the allegations in paragraphs 1 through 76 above and respectfully asks the Court to:

(a)      enter a judgment that Defendants have directly infringed, contributorily infringed, and/or induced infringement of one or more claims of each of the Patents-in-Suit;

(b)      enter a judgment awarding Blue Spike all damages adequate to compensate it for Defendants' infringement of, direct or contributory, or inducement to infringe, the Patents-in-Suit, including all pre-judgment and post-judgment interest at the maximum rate permitted by law;

(c)      enter a judgment awarding treble damages pursuant to 35 U.S.C. § 284 for Defendants' willful infringement of one or more of the Patents-in-Suit;

(d)      issue a preliminary injunction and thereafter a permanent injunction enjoining and restraining Defendants, their directors, officers, agents, servants, employees, and those acting in privity or in concert with them, and their subsidiaries, divisions, successors, and assigns, from further acts of infringement, contributory infringement, or inducement of infringement of the Patents-in-Suit;

(e)      enter a judgment requiring Defendants to pay the costs of this action, including all disbursements, and attorneys' fees as provided by 35 U.S.C. § 285, together with prejudgment interest; and

(f)      award Blue Spike all other relief that the Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Blue Spike demands a jury trial on all issues that may be determined by a jury.

Respectfully submitted,

/s/ Randall T. Garteiser
Randall T. Garteiser
  Texas Bar No. 24038912
  rgarteiser@ghiplaw.com
Christopher A. Honea
  Texas Bar No. 24059967
  chonea@ghiplaw.com
**GARTEISER HONEA, PLLC**
119 W. Ferguson Street
Tyler, Texas 75702
Telephone: (903) 705-7420
Facsimile: (888) 908-4400

Kirk J. Anderson
  California Bar No. 289043
  kanderson@ghiplaw.com
Ian Ramage
  California Bar No. 224881
  iramage@ghiplaw.com
**GARTEISER HONEA, P.C.**
44 North San Pedro Road
San Rafael, California 94903
Telephone: (415) 785-3762
Facsimile: (415) 785-3805

***Counsel for Blue Spike, LLC***