**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION**

| | |
|---|---|
| BLUE SPIKE, LLC, | ) |
| Plaintiff, | ) ) ) |
| v. | ) Case No. 6:16-cv-01142-RWS-JDL ) ) PATENT CASE |
| KYOCERA INTERNATIONAL, INC., | ) ) JURY TRIAL DEMANDED |
| Defendant. | ) ) ) |

**KYOCERA INTERNATIONAL, INC.'S MOTION TO TRANSFER
AND MEMORANDUM IN SUPPORT**

**TABLE OF CONTENTS**

I. STATEMENT OF FACTS ................................................................................................ 1
    A. Kyocera .................................................................................................................. 1
    B. Blue Spike ............................................................................................................. 3
    C. The Patents-in-Suit ................................................................................................ 4

II. LEGAL STANDARD ....................................................................................................... 4

III. ARGUMENT ..................................................................................................................... 5
    A. Blue Spike's Action Against Kyocera Should Be Transferred to the
       Southern District of California ............................................................................... 5
       1. The Southern District of California Is a Proper Venue .............................. 5
       2. The Private Interest Factors Clearly Support Transfer. ............................. 5
       3. Public Factors Favor Transfer .................................................................. 10
    B. This Court Has Already Transferred Similarly-Situated Defendants Sued
       by Blue Spike ....................................................................................................... 12

IV. CONCLUSION ................................................................................................................ 13

CERTIFICATE OF SERVICE .................................................................................................... 14

CERTIFICATE OF CONFERENCE ........................................................................................... 14

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Acer Am. Corp.*,
   626 F.3d 1252 (Fed. Cir. 2010) ...................................................................................................7

*Acqis LLC v. EMC Corp.*,
   67 F. Supp. 3d 769 (E.D. Tex. 2014) ..........................................................................................7

*Blue Spike, LLC v. 3M Cogent, Inc.*,
   No. 6:12-cv-499, 2014 U.S. Dist. LEXIS 184271 (E.D. Tex. July 11, 2014) .......................4, 13

*Blue Spike, LLC v. Adobe Sys., Inc.*,
   Nos. 6:12-cv-499, 6:12-cv-564, 2014 U.S. Dist. LEXIS 50781
   (E.D. Tex. Mar. 13, 2014) .........................................................................................................13

*Blue Spike, LLC v. Imageware Sys., Inc.*,
   Nos. 6:12-cv-499, 6:12-cv-688, 2014 U.S. Dist. LEXIS 50776
   (E.D. Tex. Mar. 13, 2014) .........................................................................................................13

*Blue Spike, LLC v. Iris ID Sys., Inc.*,
   Nos. 6:12-cv-499, 6:13-cv-88, 2014 U.S. Dist. LEXIS 50780
   (E.D. Tex. Mar. 13, 2014) .........................................................................................................13

*Blue Spike, LLC v. SoundHound, Inc.*,
   Nos. 6:12-cv-499, 6:12-cv-537, 2014 U.S. Dist. LEXIS 50779
   (E.D. Tex. Mar. 13, 2014) .........................................................................................................13

*Blue Spike, LLC v. Tex. Instruments, Inc.*,
   Nos. 6:12-cv-499, 6:12-cv-558, 2014 U.S. Dist. LEXIS 52426
   (E.D. Tex. Mar. 13, 2014) ...........................................................................................................8

*Blue Spike, LLC v. Zietera, LLC*,
   Nos. 6:12-cv-499, 6:12-cv-568, 2014 U.S. Dist. LEXIS 53949
   (E.D. Tex. Mar. 13, 2014) .........................................................................................................13

*Brite Smart Corp. v. Google Inc.*,
   No. 2:14-cv-00760-JRG-RSP, 2015 U.S. Dist. LEXIS 100842
   (E.D. Tex. Aug. 3, 2015) ............................................................................................................6

*Eon Corp. IP Holdings, LLC v. Sensus USA Inc.*,
   No. 2:10-cv-448, 2012 WL 122562 (E.D. Tex. Jan. 9, 2012) ...................................................11

*Fujinomaki v. Google Inc.*,
   No. 2:15-cv-1381-JRG-RSP, 2016 U.S. Dist. LEXIS 63783
   (E.D. Tex. May 13, 2016) ...........................................................................................................6

## **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*In re Genentech, Inc.*,
   566 F.3d 1338 (Fed. Cir. 2009) ................................................................................4, 6, 8

*Gonzalez v. Social Concepts, Inc.*,
   Nos. 2:14-CV-JRG-RSP & 2:14-CV-650-JRG-RSP, 2015 WL 1387831
   (E.D. Tex. Mar. 25, 2015) ..............................................................................................10

*In re Hoffman-La Roche Inc.*,
   587 F.3d 1333 (Fed. Cir. 2009) ...................................................................................7, 11

*Logantree LP v. Fitbit, Inc.*,
   No. 2:15-cv-01575-JRG, Slip Op. at 1 (E.D. Tex. Apr. 7, 2016) ..............................6

*In re Microsoft Corp.*,
   630 F.3d 1361 (Fed. Cir. 2011) .......................................................................................7

*In re Nintendo Co.*,
   589 F.3d 1194 (Fed. Cir. 2009) .........................................................................4, 9, 11, 12

*NovelPoint Learning LLC v. Leapfrog Enters., Inc.*,
   No. 6:10-cv-229 JDL, 2010 U.S. Dist. LEXIS 128906
   (E.D. Tex. Dec. 6, 2010) .................................................................................................7

*NovelPoint Tracking LLC v. Hemisphere GNSS (USA) Inc.*,
   No. 6:14-CV-186-LED-RSP, 2015 WL 4193727 (E.D. Tex. Mar. 29, 2015) ..........10

*Porto Tech. Co. v. Apple Inc.*,
   No. 2:15-cv-00457-JRG-RSP, 2016 U.S. Dist. LEXIS 31288
   (E.D. Tex. Mar. 11, 2016) ................................................................................................6

*In re Vistaprint Ltd.*,
   628 F.3d 1342 (Fed. Cir. 2010) .....................................................................................10

*In re Volkswagen AG*,
   371 F.3d 201 (5th Cir. 2004) .................................................................................. *passim*

*In re Volkswagen of Am. Inc.*,
   545 F.3d 304 (5th Cir. 2008) (*en banc*) ............................................................... *passim*

*In re Zimmer Holdings, Inc.*,
   609 F.3d 1378 (Fed. Cir. 2010) .....................................................................................10

# TABLE OF AUTHORITIES

**Page(s)**

**Statutes**

28 U.S.C. §§ 1331 ...................................................................................................................5

28 U.S.C. § 1338(a) ................................................................................................................5

28 U.S.C. § 1391(b)(1) ...........................................................................................................5

28 U.S.C. § 1404(a) .........................................................................................................*passim*

**Other Authorities**

Fed. R. Civ. P. 45(c)(1)...........................................................................................................8

Defendant Kyocera International, Inc. ("Kyocera") moves to transfer this case to the Southern District of California pursuant to 28 U.S.C. § 1404(a).[1] That is where Kyocera is headquartered, where the relevant documents are located, and where the majority of expected witnesses reside. By contrast, the primary tie this case has to the Eastern District of Texas is Plaintiff Blue Spike, LLC ("Blue Spike")—an entity established less than three months before its litigation campaign began, apparently for the purpose of filing this and other co-pending lawsuits. The transfer factors point to the Southern District of California as the substantially more convenient forum.

I. **STATEMENT OF FACTS**

On November 18, 2016, Blue Spike filed its First Amended Complaint ("FAC") in this District alleging that Kyocera infringes United States Patent Nos. 5,745,569 ("the '569 patent") and 8,930,719 ("the '719 patent"). (Dkt. No. 7.) Blue Spike's FAC alleges that Kyocera infringes the patents-in-suit because its accused products "are using methods, devices, and systems taught by Blue Spike's Patent-in-Suit", and identifies five allegedly infringing products: the Kyocera Hydro C5170, Hydro Elite, Hydro Xtrm, Rise C5155, and Torque E6710 smartphones. (*Id.* at ¶¶ 21, 23.)

A. **Kyocera**

Kyocera is a California corporation with its principal place of business in San Diego, California. (Declaration of Eric Klein in Support of Kyocera International, Inc.'s Motion to Transfer ("Klein Decl.") at ¶ 2.) Kyocera is a diversified company with a number of business

---

[1] Counsel for Kyocera and counsel for Blue Spike met and conferred telephonically on January 24, 2017 concerning this motion, which was originally intended to be a motion to sever Kyocera from defendants Archos, Inc. and Vizio, Inc. and transfer the severed matter to the Southern District of California. Subsequent to that meet and confer, Blue Spike filed a voluntarily notice of dismissal as to the other remaining defendants (Dkt. No. 22).

1

segments. (*Id.*) One of those segments, Kyocera's Communications Equipment Group ("CEG"), markets and sells cell phone products, including smartphones, in the United States. (*Id.*) None of Kyocera's other business segments design, develop manufacture, import, market or sell cell phones. (*Id.*) As of December 2016, the vast majority of Kyocera CEG's 133 employees work in San Diego and reside in the Southern District of California. (*Id*. at ¶ 3.)

Kyocera CEG's management and finance, marketing, and sales operations are all located in San Diego. (*Id*. at ¶ 4.) In particular, Kyocera CEG's executive team, including its President, is located in San Diego. (*Id*. at ¶ 5.) Kyocera's sales, finance, and distribution operations and the people in charge of those operations, including its Controller, are located in San Diego. (*Id*. at ¶ 6.) For example, Tom Riccardi, Finance Manager, is knowledgeable of such finance operations and maintains his office in San Diego. (*Id*. at ¶ 7.) Kyocera CEG's marketing operations and the people responsible for those operations are located in San Diego. (*Id*. at ¶ 8.) For example, Laurie Rogers, Senior Marketing Manager, is knowledgeable of such marketing operations and maintains her office in San Diego. (*Id*. at ¶ 9.) The testing of the accused products sold by Kyocera was primarily performed in San Diego. (*Id*. at ¶ 10.)

Kyocera CEG is a sales and marketing group, and does not design, develop, or manufacture the smartphones that it sells. (*Id.* at ¶ 11.) Instead, Kyocera purchases smartphones from Kyocera Corporation in Japan and then sells those smartphones to Kyocera customers. (*Id.* at ¶ 12.) The design, development, and manufacture of the smartphones Kyocera sells is performed in Asia. (*Id.* at ¶ 13.) The people responsible for Kyocera's importation of smartphones into the United States are located in San Diego. (*Id.* at ¶ 14.) All Kyocera witnesses familiar with Kyocera's corporate organization and activities are located in San Diego and maintain their documents there. (*Id.* at ¶ 16.) All of the Kyocera personnel presently

2

believed to have relevant information to the claims or defenses in this case are located in San Diego. (*Id.* at ¶ 17.)

Not only does Kyocera have significant ties to the Southern District of California, but it has no ties to the Eastern District of Texas. Kyocera does not maintain business documents or records relating to the design, development, marketing, or manufacturing of any Kyocera smartphone product in the State of Texas. (*Id.* at ¶ 15.)

### B.     Blue Spike

Blue Spike, LLC, the entity behind the spree of more than 125 suits against many hundreds of defendants, all filed in this District starting in August 2012, was formed on May 14, 2012, less than three months before its litigation campaign began. (Declaration of Justin E. Gray in Support of Kyocera International, Inc.'s Motion to Transfer ("Gray Decl.") Ex. A.)  The '569 patent was only transferred to Blue Spike on May 22, 2013, less than four months before Blue Spike began suing defendants for infringement of the patents-in-suit. (Gray Decl. Ex. B.) According to records at the USPTO, the '719 patent was assigned to Wistaria Trading Ltd on August 17, 2015. (Gray Decl. Ex. C.)  There is no record at the USPTO of the '719 patent ever being assigned to Blue Spike. *See id.*

There is no indication that Blue Spike has ever conducted any business within the Eastern District of Texas. There is also no indication that Blue Spike has any employees other than Mr. Moskowitz.

It is unclear where Mr. Moskowitz currently resides. The '719 patent, which issued on January 6, 2015, identifies Mr. Moskowitz as residing in Sunny Isles Beach, Florida. (FAC, Ex. A at 1.)  A more recent patent, U.S. Patent No. 9,270,859, which issued on February 23, 2016, identifies Mr. Moskowitz as residing in Fort Lauderdale, Florida. (Gray Decl. Ex. D.)  Prior litigation involving Blue Spike has raised questions regarding whether Mr. Moskowitz resides in

Texas or Florida. *See, e.g., Blue Spike, LLC v. 3M Cogent, Inc.*, No. 6:12-cv-499, 2014 U.S. Dist. LEXIS 184271, at *239 (E.D. Tex. July 11, 2014).

### C. The Patents-in-Suit

The '569 patent was filed on January 17, 1996, issued on April 28, 1998, expired on January 17, 2016, originally assigned to The Dice Company, a company based out of Miami, Florida, and names Scott Moskowitz and Marc Cooperman as inventors. (FAC, Ex. A at 1.) The '569 patent contains 20 method claims. (*Id.*, Ex. A at 8:30-10:34.) The '719 patent was filed on July 24, 2012, issued on January 6, 2015, claims priority to an application filed March 24, 1998, and names Mr. Moskowitz as the sole inventor. (*Id.*, Ex. B at 1.) The '719 patent identifies Mr. Moskowitz's residence as Sunny Isles Beach, Florida. (*Id.*) The '719 patent contains 50 claims directed to devices, systems, and computer program products. (*Id.*, Ex. B at 16:2-20:35.)

## II. LEGAL STANDARD

Section 1404(a) provides that, "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought …" 28 U.S.C. § 1404(a). "A motion to transfer venue should be granted upon a showing that the transferee venue is 'clearly more convenient' than the venue chosen by the plaintiff." *In re Nintendo Co.*, 589 F.3d 1194, 1197 (Fed. Cir. 2009) (*quoting In re Genentech, Inc.*, 566 F.3d 1338, 1342 (Fed. Cir. 2009)).

In deciding a transfer motion, the first question is "whether the judicial district to which transfer is sought would have been a district in which the claim could have been filed." *In re Volkswagen AG*, 371 F.3d 201, 203 (5th Cir. 2004) ("*Volkswagen I*"). If yes, the second question is whether, in light of the private and public factors and other relevant considerations, the transferee venue is "clearly more convenient" than the transferor venue. *In re Volkswagen of Am. Inc.*, 545 F.3d 304, 315 (5th Cir. 2008) (*en banc*) ("*Volkswagen II*"). The private interest

4

factors are: "(1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive." *Volkswagen I*, 371 F.3d at 203 (citing *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 241 n.6 (1981)). The public interest factors are: "(1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws [or in] the application of foreign law." *Id*. A plaintiff's choice of forum is not a factor within the § 1404(a) analysis. *Volkswagen II*, 545 F.3d at 315 n.10.

### III. ARGUMENT

#### A. Blue Spike's Action Against Kyocera Should Be Transferred to the Southern District of California.

##### 1. The Southern District of California Is a Proper Venue.

This case "might have been brought" in the Southern District of California. Under Section 1404(a), a case "might have been brought" in the transferee court if that court is a proper venue, has subject matter jurisdiction over the claims, and has personal jurisdiction over the defendants. *See Volkswagen I*, 371 F.3d at 203. Here, subject matter jurisdiction is based on the patent subject matter and is equally valid in the Southern District of California. 28 U.S.C. §§ 1331 and 1338(a). Kyocera maintains its principal place of business in the Southern District of California, which supplies personal jurisdiction and venue. *See, e.g.*, 28 U.S.C. § 1391(b)(1).

##### 2. The Private Interest Factors Clearly Support Transfer.

###### a. The Southern District of California Would Provide Greater Ease of Access to Sources of Proof.

"In patent infringement cases, the bulk of the relevant evidence usually comes from the accused infringer. Consequently, the place where the defendant's documents are kept weighs in

favor of transfer to that location." *Brite Smart Corp. v. Google Inc.*, No. 2:14-cv-00760-JRG-RSP, 2015 U.S. Dist. LEXIS 100842, at *4 (E.D. Tex. Aug. 3, 2015). Here, most of the relevant documents and the sources of proof are located in the Southern District of California, while none appear to be located in the Eastern District of Texas. All Kyocera witnesses familiar with Kyocera's corporate organization and activities are located in San Diego and maintain their documents there. (Klein Decl. ¶ 16.) Moreover, discovery and testimony will be needed from Google personnel regarding the software used in the accused Kyocera smartphones, and those relevant witnesses and their documents are likely located in Mountain View, California, where Google is headquartered. (Gray Decl. Ex. E.) The dominant location of witnesses and documents in or near San Diego militates in favor of transfer. *See, e.g.*, *Fujinomaki v. Google Inc.*, No. 2:15-cv-1381-JRG-RSP, 2016 U.S. Dist. LEXIS 63783, at *5 (E.D. Tex. May 13, 2016) (transferring litigation to the Northern District of California where "Defendants presented evidence at the hearing that the majority of party and third-party witnesses who have knowledge of the accused features are located in the Northern District of California"); *Logantree LP v. Fitbit, Inc.*, No. 2:15-cv-01575-JRG, Slip Op. at 1 (E.D. Tex. Apr. 7, 2016); *Porto Tech. Co. v. Apple Inc.*, No. 2:15-cv-00457-JRG-RSP, 2016 U.S. Dist. LEXIS 31288, at *7 (E.D. Tex. Mar. 11, 2016). While Blue Spike may contend that documents maintained in electronic form may be easily transmitted to the Eastern District of Texas, the fact that documents are electronically stored and can be transmitted is not a significant consideration because that "argument … would render this factor superfluous." *Genentech*, 566 F.3d at 1346.

Blue Spike's sparse presence in the Eastern District of Texas confirms that this District is not a more convenient forum. It appears that Blue Spike's primary, and perhaps sole, business is litigation and there is no reason to believe that it has generated any significant documentary or

physical evidence of its own.  Moreover, Blue Spike was only formed less than three months before starting its litigation campaign and the '569 patent was assigned to Blue Spike less than four months before Blue Spike started suing various defendants for infringing the '569 patent (Gray Decl. Exs. A, B).  *See In re Microsoft Corp.*, 630 F.3d 1361, 1365 (Fed. Cir. 2011) (ordering transfer where office in Texas was "recent, ephemeral, and a construct for litigation"); *NovelPoint Learning LLC v. Leapfrog Enters., Inc.*, No. 6:10-cv-229 JDL, 2010 U.S. Dist. LEXIS 128906, at *13 (E.D. Tex. Dec. 6, 2010).  And even if the relevant documents have been transferred to Blue Spike in the Eastern District of Texas in preparation for this and its other suits, such litigation-driven transfer is given no weight.  *Acqis LLC v. EMC Corp.*, 67 F. Supp. 3d 769, 775 (E.D. Tex. 2014) (citing *In re Hoffman-La Roche Inc.*, 587 F.3d 1333, 1336-37 (Fed. Cir. 2009)).  When comparing the abundant evidence located in or near the Southern District of California with the slight evidence in this District, this factor weighs heavily in favor of transfer.

> **b.** **No Key Witnesses Are Located Within the Subpoena Power of the Eastern District of Texas.**

"The venue's ability to compel testimony through subpoena power is … an important factor" and may be "invaluable."  *In re Acer Am. Corp.*, 626 F.3d 1252, 1255 (Fed. Cir. 2010). Where non-party witnesses are located outside of the court's subpoena power for trial, and "a proper venue that does enjoy *absolute* subpoena power for both depositions and trial … is available," this factor weighs in favor of transfer.  *Volkswagen II,* 545 F.3d at 316.  All Kyocera employees presently believed to have information that may be relevant to this action are located in San Diego.  (Klein Decl. ¶ 17.)  By contrast, the only potential witness in this District identified by Kyocera's research is Mr. Moskowitz.  But, as described above, it is unclear whether Mr. Moskowitz actually resides in Florida, not this district.  Further, a lone witness in this district cannot outweigh the numerous witnesses in San Diego.

7

Further, Blue Spike's infringement allegations relate to the alleged inclusion of ASLR technology within the operating system of the Kyocera smartphones.  (FAC at ¶¶ 16-17, 21.) The operating system at issue is Google's Android operating system.  (*Id.*)  Google is headquartered in Mountain View, California.  (Gray Decl. Ex. E.)  It is likely that at least one Google witness will need to be deposed, and potentially testify at trial, in this litigation concerning the technical details of the Android operating system at issue.  As Google is within the subpoena power of the Southern District of California because travel thereto would not impose significant expense (*see* Fed. R. Civ. P. 45(c)(1)), and is not within the subpoena power of this district, this factor weighs in favor of transfer.

Additionally, an important prior art witness, Rafail Ostrovsky, Ph.D., who authored numerous relevant prior art papers and is a co-inventor on a prior art U.S. patent, is a professor at the University of California, Los Angeles ("UCLA") and appears to reside in the Los Angeles, California area, which is also within the subpoena power of the Southern District of California under Fed. R. Civ. P. 45(c)(1).  (Gray Decl. Ex. F.)

        **c.**        **The Cost of Attendance for Willing Witnesses Would Be Lower in the Southern District of California.**

The availability and convenience of witnesses is "the single most important factor in the transfer analysis[.]"  *In re Genentech,* 566 F.3d at 1343 (quoting citation omitted).  The Fifth Circuit adopted a "100-mile rule" to assist with this analysis.  Under the "100-mile rule," "[w]hen the distance between an existing venue for trial of a matter and proposed venue under § 1404(a) is more than 100 miles, the factor of inconvenience to witnesses increases in direct relationship to the additional distance traveled."  *Blue Spike, LLC v. Tex. Instruments, Inc.*, Nos. 6:12-cv-499, 6:12-cv-558, 2014 U.S. Dist. LEXIS 52426, at *104 (E.D. Tex. Mar. 13, 2014) (citing *Volkswagen I*, 371 F.3d at 204-05).  The "100-mile rule" favors transfer (with differing

degrees) if the transferee venue is a shorter distance from witnesses than the transferor venue. *See Volkswagen II*, 545 F.3d at 317.

This factor overwhelmingly favors transfer to the Southern District of California. All of the Kyocera personnel presently believed to have relevant information to the claims or defenses in this case are located in San Diego. (Klein Decl. at ¶ 17.) Requiring these witnesses to travel to the Eastern District of Texas would burden Kyocera with expenses relating to travel and lodging, and the witnesses with the burdens of being away from work, family, and community. For these California-based employees to travel to Texarkana, Texas, the employees would need to travel roughly 1,500 miles and take at least two airline flights each way. Litigation in the Eastern District of Texas would impose financial costs on Kyocera and require these witnesses to spend additional time away from their regular employment. *Volkswagen II*, 545 F.3d at 317 (finding that additional travel time increases the probability for expenses and that "[w]itnesses not only suffer monetary costs, but also the personal costs associated with being away from work, family, and community"); *In re Nintendo*, 589 F.3d at 1199 ("Additional distance [from home] means additional travel time; additional travel time increases the probability for meal and lodging expenses; and additional travel time with overnight stays increases the time which these fact witnesses must be away from their regular employment.") (citing *In re TS Tech USA Corp.*, 551 F.3d 1315, 1320 (Fed. Cir. 2008)).

The Southern District of California, then, is more convenient for the vast majority of likely witnesses: all of the Kyocera witnesses would find the Southern District of California more convenient, and only one, possibly (Mr. Moskowitz), may find the Eastern District of Texas to be more convenient. This factor, too, weighs heavily in favor of transfer.

### d. There Are No Practical Problems That Would Make the Southern District of California a Less Convenient Venue.

Because this case is in its early stages, no practical problems exist that would deter this Court from transferring the case to the Southern District of California. The Court has not yet scheduled a Scheduling Conference and discovery has not opened.

While Blue Spike has filed multiple lawsuits in the Eastern District of Texas, "the existence of multiple lawsuits involving the same issues" is in no way dispositive of the venue analysis. *See In re Vistaprint Ltd.*, 628 F.3d 1342, 1345 n.2 (Fed. Cir. 2010); *see also In re Zimmer Holdings, Inc.*, 609 F.3d 1378, 1382 (Fed. Cir. 2010) (ordering transfer and finding that the district court erroneously "assigned substantial weight in its analysis to the fact that [plaintiff] had also filed suit against another defendant in the same forum"); *NovelPoint Tracking LLC v. Hemisphere GNSS (USA) Inc.*, No. 6:14-CV-186-LED-RSP, 2015 WL 4193727, at *2 (E.D. Tex. Mar. 29, 2015); *Gonzalez v. Social Concepts, Inc.*, Nos. 2:14-CV-JRG-RSP & 2:14-CV-650-JRG-RSP, 2015 WL 1387831, at *2 (E.D. Tex. Mar. 25, 2015).

### 3. Public Factors Favor Transfer

### a. There Is No Administrative Difficulty Flowing from Court Congestion.

The median times to trial in the Southern District of California and the Eastern District of Texas are and 708 days and 769 days, respectively for patent cases over the last five years. (Gray Decl. Ex. G.) Thus, transfer to the Southern District of California may also result in judicial efficiency by reaching resolution potentially two months earlier than in this District. This factor should weigh in favor of transfer.

### b. The Southern District of California Has a Greater Interest in the Dispute.

Given the strong connections between the Southern District of California and this action—and the minimal (if any) connections between this District and this action, this factor strongly favors transfer. As the Fifth Circuit has emphasized, "jury duty is a burden that ought not to be imposed upon the people of a community which has no relation to the litigation." *Volkswagen I*, 371 F.3d at 206. Accordingly, the Court should analyze the factual connection that this case has with both the transferee and the transferor venues. *Id.* Generally, local interests that "could apply virtually to any judicial district or division in the United States" are disregarded in favor of particularized local interests. *Volkswagen II*, 545 F.3d at 318. Specifically, with respect to patent cases, "[t]he Fifth Circuit has unequivocally rejected the argument that citizens of the venue chosen by the plaintiff have a 'substantial interest' in adjudicating a case locally because some allegedly infringing products found their way into the Texas market." *Nintendo*, 589 F.3d at 1198 (citations omitted).

The Southern District of California has strong local connections to this case. The vast majority of Kyocera CEG's 133 employees work in San Diego and reside in the Southern District of California. (Klein Decl. at ¶ 3.) Numerous likely witnesses are located in Southern California, including the Kyocera employees with knowledge of Kyocera's corporate organization and activities. (*Id.* at ¶¶ 4-9, 14, 16-17.) *See In re Hoffman-La Roche Inc.*, 587 F.3d 1333, 1336 (Fed. Cir. 2009) ("[L]ocal interest in this case remains strong because the cause of actions calls into question the work and reputation of several individuals residing in or near that district and who presumably conduct business in that community."); *Eon Corp. IP Holdings, LLC v. Sensus USA Inc.*, No. 2:10-cv-448, 2012 WL 122562, at *5 (E.D. Tex. Jan. 9, 2012).

By contrast, this District has little—if any—unique connection to this case. While Blue Spike claims its principal place of business is in this district, it appears that Blue Spike's primary, and perhaps sole, business is asserting its patent portfolio against many hundreds of defendants, and Blue Spike appears to have been created for just this purpose. Kyocera is not based in this District and the accused Kyocera smartphones are available and sold throughout the United States. As such, the citizens of this District "have no more or less of a meaningful connection to the case than any other venue." *Nintendo*, 589 F.3d at 1198 (quoting *In re TS Tech U.S. Corp.*, 551 F.3d at 1321). And this District has much less of a connection than do the citizens of the Southern District of California. This factor also weighs heavily in favor of transfer.

### c. There Is No Concern Regarding Familiarity of the Forum with the Law that Will Govern the Case.

The governing laws in this lawsuit are promulgated by federal statutes and are subject to the interpretation and guidance of the Federal Circuit, regardless of the district in which this case is tried. Hence, the Southern District of California and the Eastern District of Texas are equally familiar with controlling law and fully capable of adjudicating the issues involved in this matter. This factor does not affect the issue of transfer.

### d. There Are No Concerns Regarding Conflicts of Laws.

Transferring this patent infringement suit to the Southern District of California would not create problems of conflicts of laws or in the application of foreign law. This factor is neutral.

## B. This Court Has Already Transferred Similarly-Situated Defendants Sued by Blue Spike.

Judges in this district have already transferred to various districts throughout the United States a number of defendants previously sued by Blue Spike who are situated similarly to Kyocera, in that their witnesses and documents were all predominately in a single district. *See,*

12

*e.g., Blue Spike, LLC v. 3M Cogent, Inc.*, 2014 U.S. Dist. LEXIS 184271; *Blue Spike, LLC v. SoundHound, Inc.*, Nos. 6:12-cv-499, 6:12-cv-537, 2014 U.S. Dist. LEXIS 50779 (E.D. Tex. Mar. 13, 2014); *Blue Spike, LLC v. Imageware Sys., Inc.*, Nos. 6:12-cv-499, 6:12-cv-688, 2014 U.S. Dist. LEXIS 50776 (E.D. Tex. Mar. 13, 2014); *Blue Spike, LLC v. Iris ID Sys., Inc.*, Nos. 6:12-cv-499, 6:13-cv-88, 2014 U.S. Dist. LEXIS 50780 (E.D. Tex. Mar. 13, 2014); *Blue Spike, LLC v. Adobe Sys., Inc.*, Nos. 6:12-cv-499, 6:12-cv-564, 2014 U.S. Dist. LEXIS 50781 (E.D. Tex. Mar. 13, 2014); *Blue Spike, LLC v. Google Inc.*, Nos. 6:12-cv-499, 6:12-cv-558, 2014 U.S. Dist. LEXIS 52426 (E.D. Tex. Mar. 13, 2014); *Blue Spike, LLC v. Zietera, LLC*, Nos. 6:12-cv-499, 6:12-cv-568, 2014 U.S. Dist. LEXIS 53949 (E.D. Tex. Mar. 13, 2014). For the same reasons, this action should be transferred to the Southern District of California.

## IV. CONCLUSION

For the foregoing reasons, Kyocera respectfully requests the Court transfer this action to the Southern District of California.

Dated: January 24, 2017

Respectfully submitted,

/s/ Justin E. Gray
Jose L. Patiño (CA Bar No. 149568)
  jpatino@foley.com
Nicola A. Pisano (CA Bar No. 151282)
  npisano@foley.com
Justin E. Gray (CA Bar No. 282452)
  jegray@foley.com
Foley & Lardner LLP
3579 Valley Centre Drive, Suite 300
San Diego, CA 92130-3302
Telephone: 858.847.6700
Facsimile: 858.792.6773

Attorneys for Defendant
KYOCERA INTERNATIONAL, INC.

13

**CERTIFICATE OF SERVICE**

I hereby certify that all counsel of record who have consented to electronic service are being served with a copy of this document via the Court's CM/ECF system per Local Rule CV-5(a)(3) on this, the 24th day of January, 2017. Any other counsel of record will be served by first class U.S. mail on this same date.

*/s/ Justin E. Gray*
Justin E. Gray

**CERTIFICATE OF CONFERENCE**

I hereby certify that counsel for Kyocera conferred by phone with counsel for Blue Spike on January 24, 2017 regarding the substance of this motion. Counsel for Blue Spike represented that Blue Spike would oppose this motion.

*/s/ Justin E. Gray*
Justin E. Gray